By the Court.—Freedman, J.
This action Avas brought to recover the sum of $500, paid by the plaintiff on account of a contract Avitli the defendants for the purchase and sale of certain real estate in the city of Ñbav York, and the sum of $250, incurred by the plaintiff as an expense in the examination of the title. On the day appointed for the performance of the contract, both parties claimed to be ready to perform and to tendí r performance, but the plaintiff objected to the title as defective. The principal defect claimed, and the only one necessary to be considered upon the present appeal, arises out of the following facts and circumstances:
The title of record to the premises was, prior to March 21, 1871, in Wm. S. Carr. He Avas then a member of the firm of Wm. S. Carr & Co., and the premises in question were in fact part of the copartnership assets, and Wm. S. Carr held the title as trustee for said firm. Upon a dissolution of this copartnership in the early part of 1871, it was found that the firm was indebted to Andrew Henderson, the special partner, in the sum of *249 $00,000. On March 21, 1871, Wm. S. Carr conveyed the said premises to Andrew Henderson by a warranty deed with full covenants, which deed was recorded as a deed March 22,1871. The deed is, on its face, absolute, and it recites that the conveyance is made subject to a mortgage of $6,000, which the grantee assumed and agreed to pay. ' On April 4, 1871—nine days after the record of the deed—the several members of the firm entered into an agreement with each other, by which it is recited that Andrew Henderson, the special partner of Wm. S. Carr & Co., receives and takes from Wm. S. Carr, trustee for the firm, deeds of certain premises (including those in question), of an estimated valuation, over incumbrances, amounting in the aggregate to $31,500, “as security for the sum of $30,000, with the understanding that whatever above that sum is realized by the sale, belongs" to Wm. S. Carr & Co., and Andrew Henderson agrees to pay the difference to them whenever received, and Wm. S. Carr and Tli. Susemihl, composing the firm of Wm. S. Carr & Co., agree to make good and pay over any difference to Andrew Henderson, if that amount should not be realized. The sale to be effected inside of two years......Andrew Henderson gives to Wm. S. Carr & Co., the right to rent and collect the rent for these houses and lots, the same as they have done heretofore, before the deeds were made Gver to him, and in return Wm. S. Carr & Co., agree to see that the taxes and assessments, as well as the interest on the first mortgages, are paid. It is further mutually understood that the property, being only held by Andrew Henderson as trustee, for the sum of thirty thousand dollars, as before mentioned, Andrew Henderson agrees not to dispose of any of this property for a less amount than the deeds made over to him call for, without getting the consent of Wm. S. Carr & Co., or- else forfeit his claim on Wm. S. Carr & Co. in case he should not realize the amount of thirty thousand dollars, for which it is pledged.”
*250 Andrew Henderson died in 1873, and Wm. S. Carr died about October, 1880, both leaving wills. The foregoing agreement was not recorded until September, 1882, when it was recorded both in libers of deeds and of mortgages". Matthew Henderson, as executor of Andrew Henderson, about December 29, 1881, assigned all his interest in such agreement to E. C. Delevan. Delev.an, in an action, against the representatives and heirs of Carr and Theo. Susemihl, claiming to foreclose said instrument, procured a decree of foreclosure and sale, and said premises were sold and conveyed by the referee to said Delevan, and by him were conveyed to the defendants. The heirs of Andrew Henderson were not made parties to the action.
At the time of the conveyances to Henderson and the execution of the agreement recited above, the firm of Wm. S. Carr & Co. was solvent and continued solvent until after the retirement of Susemihl iti. 1876.
Upon these facts, as to which there is no dispute, it was claimed and is still claimed by the plaintiff that inasmuch as no conveyance by Andrew Henderson or his heirs, was shown, the legal title presumptively is in such heirs; and that as they were not made parties to the foreclosure proceedings, they are not concluded by them, and are at liberty at any time to assert their title as it appéars on record.
The referee, however, held plaintiff’s contention to be unfounded because, in his opinion, the deed and agreement together were in effect a mortgage; that on the death of Andrew Henderson th'e title to said mortgage passed to his executor; that the subsequent assignment of the mortgage by said executor to Delevan, the foreclosure proceedings instituted thereon” by Delevan, and the purchase by him of the premises from the referee who conducted the sale, were sufficient to invest Delevan with a good title; and that consequently the title derived by the defendants from Delevan, is a sufficiently good title which a purchaser can be compelled to take.
*251 In this I think the referee erred. True, the transaction between Andrew Henderson and the firm of Carr & Co. was such as to give to said firm the right, upon the realization by Henderson of more than ,$30,000, to insist that the deed and agreement together, as between themselves, was in a certain sense in the nature of a mortgage, and that therefore Henderson was bound to refund any excess. But that consideration alone cannot control the title. As matter of fact, the deed and agreement taken together neither are a mortgage in form, nor did the parties thereby intend that they should be a mortgage such as is ordinarily given to secure the payment of money.
The deed and agreement taken together are not a mortgage in form, for the following reasons, viz.: They were not contemporaneous in execution. There is no evidence that at the time of the execution of the deed, or at any time between the execution and the recording of it, the agreement was even contemplated. The deed is absolute on its face, and in the agreement there is no provision for a reconveyance of the premises in any event. There is no agreement by the firm to pay the principal debt, but only any difference or balance which may remain after a sale made with their consent. If a sale is made without their consent, the grantee forfeits his claim on the firm to the extent of $30,000. The sale was to be made in two years. The grantee assumes the payment of the mortgage of $6,000, which was on the premises.
On the question of intent it appears that the considerations recited in the several deeds mentioned in the agreement amount to $31,500, above the incumbrances assumed by the grantee; that they were in the first instance received in absolute payment to that amount; that afterwards a new agreement was made to insure to Henderson a certain sum ($30,000), and to give to the firm the benefit of any excess, and that the manifest intention of all the parties was that the absolute title in *252 fee should vest in Henderson with absolute power of disposition by deed, and that at the same time he should be a trustee as to the proceeds, so that he should pay the proceeds to himself to the extent of 30,000, and the excess, if any, to Carr & Co. That Henderson so understood it, appears from his assuming the payment of the mortgage on the premises and from the fact that he put the deed at once on record as a deed and before the agreement of April 1st was made.
The legal result of all this is, that Henderson did become the owner of an absolute title in fee with absolute power of disposition, and a trustee as to proceeds only, and that therefore, upon his death, the legal title to the premises vested in his heirs, and not in his executor. As a necessary consequence, his heirs could not be affected by any transfer or assignment by the executor not assented to by them.
The legal result being as stated, it further follows that at the trial the plaintiff showed the title to be not' only doubtful, but bad, and that for that reason he was entitled to recover within the rule applicable to actions at law as laid down in O’Reilly v. King, 28 How. 408, and The Methodist Episcopal Church Home v. Thompson, 52 Super. Ct. 321.
The judgment should be reversed, the order of reference vacated, and a new trial ordered with costs to the appellant to abide the event.
Sedgwick, Ch. J., and Ingraham, J., concurred.